

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

JHP:AMC/JA
F#2015R01974
CMN 2021201054

April 14, 2023

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Sung Soo Chon a/k/a Steve S. Chon
              Criminal No. 22-259 (LDH)(MMH)

Dear Judge DeArcy Hall:

        The government submits this sentencing submission with respect to Sung Soo Chon a/k/a Steve S. Chon (hereinafter, "Chon"). Chon engaged in a tax scheme to underreport cash wages paid to employees of the spas he owned and operated. Many of these employees did not have legal status in the United States. This illegal conduct went on for several years. In total, Chon and his subordinates concealed over $1.3 million in cash wages, from which no Federal Insurance Contributions Act ("FICA") or income taxes were withheld, accounted for, or paid over to the Internal Revenue Service ("IRS"). The defendant's conduct undermined our tax system, which is premised on honest self-reporting, and gave him a competitive advantage over law-abiding businesses. The government respectfully requests that the Court impose a sentence within the applicable U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range. As referenced in the plea agreement, the defendant has stipulated to an adjusted offense level of 13 which carries a range of 12 to 18 months of imprisonment. The defendant's sentencing is scheduled for June 8, 2023.

**Charge and Conviction**

        On June 24, 2022, Chon was charged by Information with one count of willful failure to collect, truthfully account for, and pay over tax, in violation of 26 U.S.C. § 7202. The defendant appeared before U.S. Magistrate Judge Marcia M. Henry on the same date and pleaded guilty to the above-referenced charge. On December 1, 2022, this Court accepted the defendant's plea of guilty to Count 1 of the Information after review of the transcript of the June 24, 2022 plea hearing.

**Background and Offense Conduct**[1]

Chon owned and operated a consortium of spa services and treatment facilities, including Spa Castle Inc., located in College Point, New York ("Spa Castle Queens") and Spa Castle Texas Inc., located in Carrollton, Texas ("Spa Castle Texas"). In 2014, Spa Castle Queens and Spa Castle Texas, along with other enterprises, became subsidiaries of C. Castle Group Corp., which was headquartered in Flushing, New York (hereinafter, "the Spa Castle Entities"). Chon was the 80% shareholder of the Spa Castle Entities and was listed as the Chief Executive Officer ("CEO").[2]

As the majority owner and operator of the Spa Castle Entities, Chon was a responsible person and had a legal duty to collect, truthfully account for, and pay over to the IRS the employment taxes associated with the employees of the Spa Castle Entities and to file Employer's Quarterly Federal Tax Returns, IRS Forms 941 ("Form 941").[3] The evidence derived from the criminal investigation shows that from approximately 2014 or earlier to 2017, Chon and others engaged in a scheme to underreport the cash wages paid to certain employees, many of whom did not have legal status to work in the United States. In furtherance of this scheme, for each of the quarters in the investigation period, Chon caused to be filed false Forms 941 on behalf of the Spa Castle Entities that did not include the full amount of cash wages paid to employees.

The investigation revealed that Chon oversaw the day-to-day operations of the Spa Castle Entities, to include the reporting and distribution of payments to employees, which was authorized from headquarters in Queens, New York. When Chon was not present to perform these tasks himself, he delegated them to managers and employees under his supervision and control. Evidence obtained during the investigation shows that Chon and his managers maintained records referencing the unreported cash payments and its purpose. Ultimately, IRS records show that Chon failed to withhold the employee portion of the employment taxes due and owing from these unreported cash wages, and further failed to pay them over to the IRS, together with the employer's matching share of the employment taxes. In total, IRS has estimated that Chon and his subordinates concealed over $1.3 million in cash wages, from which no federal income tax or FICA tax were withheld, accounted for, or paid over to the United States.

---

[1] Pursuant to the Court's scheduling order, the U.S. Probation Department was to submit the final Presentence Investigation Report ("PSR") on March 16, 2023. Undersigned counsel were informed that the final PSR would not be available until May 4, 2023, after the government's revised deadline to submit its sentencing memorandum. We ask for the Court's indulgence to permit the government to submit a supplemental sentencing memo to address any objections to the PSR, if necessary.

[2] The remaining 20% ownership share of the Spa Castle Entities was owned by Chon's two brothers, Victor Chon and Daniel Chon, each owning 10%.

[3] Pursuant to Title 26 of the United States Code, employers, including the Spa Castle Entities, had a duty to collect, truthfully account for and pay over to the IRS federal income taxes and FICA taxes, and to file Forms 941. In addition to the employees' share of the federal income and FICA taxes that were required to be paid over to the IRS, also known as trust fund taxes, the Spa Castle Entities were also required to pay over to the IRS a matching share of the FICA taxes. This combination of the employees' and employer's share of taxes is also known as employment taxes.

**Tax Loss & Relevant Conduct**

The following chart shows the amount of trust fund taxes that Chon failed to pay over and the unpaid employer portion of the employment taxes for the Spa Castle Entities for the relevant time period.

| Tax Year | Employee Portion | Employer Portion | Total Federal Employment Tax Due |
|---|---|---|---|
| 2014 | $72,376.32 | $72,376.32 | $144,752.64 |
| 2015 | $20,288.03 | $20,288.03 | $40,576.06 |
| 2016 | $6,955 | $6,955 | $13,910 |
| TOTAL | $99,619.35 | $99,619.35 | $199,238.70 |

As a result, the tax due and owing related to the Spa Castle Entities for which Chon is responsible is approximately $199,238.70.

The parties have agreed in the plea agreement that the defendant's tax loss for purposes of the Guidelines is $199,238. See Plea Agreement ¶ 2. This figure includes the tax loss of the charged count in the Information as well as the relevant conduct for the uncharged periods.

**Guidelines Calculation**

Pursuant to U.S.S.G. § 2T1.6, the base offense level corresponds to the tax loss reflected in the Tax Table found in § 2T4.1. In this case, as explained above, that figure is the aggregate of the uncollected employees trust fund taxes and the employer's share of the employment taxes not paid over or accounted for on Forms 941, which totals $199,238. As a result, the Guidelines calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 16 | Pursuant to U.S.S.G. § 2T4.1, the base offense level is 16 because the loss is more than $100,000. |
| Acceptance of Responsibility: | -3 | Pursuant to U.S.S.G. § 3E1.1, the offense level should be decreased by 3 levels because the defendant demonstrated acceptance of responsibility by pleading guilty, and the defendant did so in a timely manner such that the government could avoid preparing for trial. |
| Adjusted Offense Level: | <u>13</u> | |

The defendant has a Criminal History Category of I, which results in a Guideline range of 12 to 18 months.

**The Appropriate Sentence**

The government respectfully submits that a sentence within the Guidelines range of 12 to 18 months of imprisonment is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Chon's conduct was not a one-time infraction. Rather, his illegal conduct was part of his business model and the evidence suggests he carried it out for at least a decade from the inception of his business until he was caught. He filed multiple fraudulent tax returns in support of the scheme. His scheme left law-abiding, tax paying competitors at a disadvantage. His disregard for the law can only be addressed with a term of imprisonment.

Although application of the U.S. Sentencing Guidelines is no longer mandatory, see United States v. Booker, 543 U.S. 220, 245 (2005), the Guidelines still play a "central role" in the sentencing decision, United States v. Molina-Martinez, 136 S. Ct. 1338, 1345 (2016). The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." Id. At 1349. Indeed, in most instances, "the Guidelines are not only the starting point…but also the lodestar." Molina-Martinez, 136 S. Ct. at 1346. Moreover, the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a Guidelines sentence.

The crime for which the defendant pleaded guilty is a serious one. He paid more than $1.3 million in income to his employees "under-the-table," in a manner intended to keep them off the books and outside of the normal reporting requirements, as he knew some did not have legal work authorization. In order cover his tracks, the defendant filed false Forms 941 that did not accurately report the true payroll activities of the Spa Castle entities. A functioning government relies on its citizens and residents to report timely, completely, and honestly all taxes they owe, which is why Congress has made it a criminal offense to file false returns or evade income taxes. As Justice Oliver Wendell Holmes stated, "[t]axes are what we pay for a civilized society . . . ." Compania General de Tabacos de Filipinas v. Collector of Internal Revenue, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting).

The goal of general deterrence weights heavily in favor of a Guidelines sentence here. In criminal tax cases, the paramount consideration for the Court at sentencing is "the need to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(3). The introductory commentary to the Guidelines for federal tax offenses emphasizes the need for sentencing courts to consider deterrence when imposing a sentence on tax offenders:

> The federal criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying the Sentencing Guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

Guidelines, Ch. 3, pt. T, intro. cmt.

Statistics support the position that tax crimes are under-prosecuted, and therefore, require meaningful sentences that promote general deterrence. In fiscal year 2021, the IRS processed more than 261 million tax returns, only .55 percent of individual tax returns filed and .92 percent

of corporation tax returns filed were audited, which is less than one percent per type of return. See IRS Data Book p. 33, retrieved at https://www.irs.gov/pub/irs-pdf/p55b.pdf

In 2021, only 2,581 criminal investigations were initiated, and 2,766 representing various tax years were completed. Some cases are closed due to limited resources. Approximately 1,982 cases were recommended for prosecution and 78% of defendants in tax prosecutions were sentenced to incarceration. In 2022, only 2,558 criminal investigations were initiated. Approximately 1,837 cases were recommended for prosecution and 77% of defendants in tax prosecutions were sentenced to incarceration last year. See 2022 IRS CI Annual Report p. 44, retrieved at https://www.irs.gov/pub/irs-pdf/p3583.pdf. These statistics justify the policy that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration" in sentencing. Guidelines, Ch. 3, pt. T, intro. Cmt.

This primary consideration of deterrence generally weighs in favor of a sentence of imprisonment. See United States v. Engle, 592 F.3d 495, 502 (4th Cir. 2010) ("Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the [Sentencing] Commission's focus on incarceration as a means of third-party deterrence is wise."); United States v. Baucom, 300 F. App'x 457, 464-65 (4th Cir. Jan 13, 2010) (unpublished) ("We agree with the government that the district court failed to adequately consider the need for deterrence . . . [and the Sentencing Commission's] belief that deterrence of others should be a primary consideration when sentencing tax evaders."); United States v. Cutler, 520 F.3d 136, 163 (2d Cir. 2008) (finding below-Guidelines sentence substantively unreasonable because "the tax offenses of which [the defendant] was convicted are the type of offense for which the length of prison term is especially related to the need for deterrence."). As Judge Weinstein noted, "Most income tax evasion is undiscovered. To be effective as general deterrence, punishments should lead entrepreneurs considering tax evasion to calculate that they will be punished by incarceration . . . if their cheating is discovered." United States v. Gorodetsky, 288 F.R.D. 248, 249 (E.D.N.Y. 2013).

The real or definite prospect of prison serves as a significant deterrent, particularly when compared with the pre-Guidelines practice where probation, not prison, was the norm. *See* Guidelines, § 1A1.4(d), intro. cmt.; see also United States v. Morace, 594 F.3d 340, 349 (4th Cir. 2010) ("[T]he policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes."). A sentence of imprisonment to deter would-be tax frauds also protects the public's interest in preserving our federal tax system, which relies on the individual taxpayer's honest self reporting. See United States v. Carlston, 562 F. Supp. 181, 185 (N.D. Cal. 1983) ("Deterrence is important in connection with income tax violations because of our reliance on a system of self-assessment.") (quoting Sentencing the Income Tax Violator, 26 F.R.D. 264 (1961). Without a meaningful prison sentence for Chon, other tax cheats will continue to flout the law, confident that the reward outweighs the risk of getting caught.

Nothing in the defendant's history or characteristics supports departing from a guidelines sentence here. Nevertheless, Chon may argue that because he has now repaid the taxes owed, he

5

should receive only a probationary sentence. However, that is simply what is required of all U.S. citizens and residents – to pay their fair share of taxes. It speaks to the defendant's character that it took a criminal prosecution for him to become fully compliant with his taxpaying obligations. Indeed, his ability to pay restitution to the IRS should not dissuade this Court from sentencing him to a period of incarceration. As one court has stated: "Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white- and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail." United States v. Mueffelman, 470 F.3d 33, 40 (1st Cir. 2006). Put simply, the defendant should not be able to pay his way out of imprisonment.

Judges within the Eastern District of New York have imposed significant terms of imprisonment on defendants in similar cases. By the comparison, the following cases involve either tax evasion or failure to withhold and pay over employment taxes, as well as other forms of corporate manipulation similar to Chon:

- United States v. Sergei Denko – 19-CR-192 (RPK). On June 7, 2021, in Brooklyn, New York, defendant Sergei Denko was sentenced to 20 months in prison and one year of supervised release. Denko owned and operated a successful plumbing contracting business. He cashed checks constituting gross receipts of his business to fund an "off-book" cash payroll. Denko concealed this conduct from his accountant, causing the preparation and filing of false returns, which resulted in a tax loss of $732,462. Defendant's guidelines range was 27 to 33 months' imprisonment, and Judge Kovner sentenced the defendant to 20 months. Denko pleaded guilty to one count of 26 U.S.C. § 7202.

- United States v. Nicholas Pascullo – 21-CR-71 (DRH). On September 30, 2019, on Long Island, New York, defendant Nicholas Pascullo was sentenced to 6 months in prison and ordered to serve two years of supervised release. Pascullo co-owned and operated a car wash in Lindhurst, New York. From at least 2012 through 2016, Pascullo underreported cash receipts on the business's annual partnership tax returns, the income which flowed to his personal tax returns. He also gained an unfair advantage over other local businesses by paying some of his employees under-the-table cash payments in at least 2012 and 2013. Prior to sentencing, Pascullo re-paid the tax loss of $315,001. At the sentencing, the Court expressly considered the recommendation of U.S. Probation and defense counsel to sentence Pascullo to probation. The Court also considered all of the circumstances related to the defendant—the tragic events that caused him to lose his left leg, other circumstances relevant to his upbringing and background, and the present conditions of his health, including ambulatory problems that persist to this day. Given the circumstances of the case, however, Judge Hurley deemed it appropriate to impose a sentence that included a period of incarceration. Pascullo pleaded guilty to one count of 26 U.S.C. § 7201.

Anchoring the sentence to the Guidelines range also serves the vital goal of uniformity and fairness in sentencing. The Guidelines range reflects the seriousness of the offense, promotes respect for the law, and provides for just punishment in this case. For all of these reasons, the

appropriate sentence here is one within the guidelines range of between 12 and 18 months of imprisonment.

**Restitution**

Pursuant to the parties' plea agreement, Chon has agreed to pay $199,238 in restitution to the IRS as a result of this offense. The Court should order that such restitution be paid. Prior to his sentencing, the defendant has submitted a payment in satisfaction of his restitution obligation. While the Court can and should consider Chon's willingness to pay restitution, this factor should not reduce Chon's sentence below the Sentencing Guidelines range.

**Conclusion**

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the Guidelines range of 12 to 18 months, as well as a restitution order in the amount of $199,238 consistent with the parties' plea agreement.

Sincerely,

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice
Tax Division

By:

Ann M. Cherry
Trial Attorney
(202) 305-5964

Jorge Almonte
Assistant Chief
(202) 305-3676

cc. Counsel for Sung Soo Chon a/k/a Steve S. Chon (via ECF)